UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Chapelle Alphonso Bouldin

   v.                                      Case No. 19-cv-376-JL

Robert Hazlewood, Warden, FCI-Berlin;
and Hugh Hurwitz, Director, Federal
Bureau of Prisons

## REPORT AND RECOMMENDATION

Chapelle Alphonso Bouldin, an inmate at the Federal Correctional Institution in Berlin, New Hampshire ("FCI-Berlin"), has petitioned for a writ of habeas corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2241. The matter is before this court for preliminary review to determine whether the petition is facially valid and may proceed. See 28 U.S.C. § 2243; LR 4.3(d)(4)(A); Rule 4 of the Rules Governing Section 2254 Cases ("§ 2254 Rules"); see also § 2254 Rule 1(b) (§ 2254 Rules may apply to § 2241 petitions).

## Background

In April 2014, Bouldin was charged, by a two-count criminal information filed in the Eastern District of Virginia, with possession with intent to distribute heroin, in violation of 21 U.S.C. § 841 (Count I), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18

U.S.C. § 924(c) (Count II).  See United States v. Bouldin, No. 4:13-cr-105-MSD-LRL-1 (E.D. Va.) ("Criminal Case") (ECF No. 11). On April 3, 2014, Bouldin waived indictment and pleaded guilty to both counts.  Apr. 3, 2014 Plea Agt., Criminal Case (ECF No. 15).

At Bouldin's sentencing hearing, the court noted that a search of Bouldin's apartment incident to his May 3, 2013 arrest revealed a handgun and twenty grams of heroin.  See Aug. 7, 2014 Sent'g Tr., Criminal Case (ECF No. 35, at 22).  The court further noted that while Bouldin was out on bond on the charges associated with the May 3, 2013 arrest, Bouldin was the target of law enforcement surveillance for suspected drug dealing.  See id. (ECF No. 35, at 23).  While Bouldin was being watched, he was involved in a car chase with law enforcement, during which Bouldin threw a bag out of his car window which was subsequently found to contain 48.1 grams of heroin.  See id.

The Presentence Investigation Report ("PSR") prepared in Bouldin's case attributed 529.1 grams of heroin to Bouldin, based on the 68.1 grams seized by the police, augmented by additional amounts identified during the probation officer's investigation.  See Oct. 20, 2016 Order, Criminal Case (ECF No. 46, at 14) (citing PSR ¶ 18).  The court, in the sentencing hearing, sustained Bouldin's objection to the PSR's calculation of the amount of heroin attributable to Bouldin, as the parties

2

had stipulated to an amount not to exceed 400 grams in the plea agreement.  See Aug. 7, 2014 Sent'g Tr., Criminal Case (ECF No. 35, at 5); Apr. 3, 2014 Stmt. of Facts, Criminal Case (ECF No. 16, at 2); Apr. 3, 2014 Plea Agmt., Criminal Case (ECF No. 15).

The court sentenced Bouldin to a total of 140 months of imprisonment on both offenses, consisting of eighty months on Count I (towards the upper end of the advisory Guidelines range of seventy to eighty-seven months), and sixty months on Count II, to be served consecutively.  See Aug. 7, 2014 Sent'g Tr., Criminal Case (ECF No. 35, at 5).  The sentence hinged on the court's reliance on the PSR for finding that Bouldin was responsible for at least 100 grams of heroin and the court's reliance on the parties' negotiated amount for finding that he was not responsible for more than 400 grams of heroin.[1]  Bouldin did not appeal his sentence.

---

[1] In denying Bouldin's initial § 2255 motion, the court stated as follows:

> Under the advisory [U.S. Sentencing] Guidelines, attribution of at least 400 grams but less than 700 grams of heroin results in a base offense level of 26, while an attribution of at least 100 grams but less than 400 grams results in a base offense level of 24.  By negotiating a reduction from 529.1 grams of heroin down to "less than 400" grams, defense counsel successfully achieved a reduction in Petitioner's base offense level from 26 to 24.

See Oct. 20, 2016 Order, Criminal Case (ECF No. 46, at 14 n.3)

3

In his first post-conviction motion in his criminal case, filed March 23, 2015, Bouldin challenged his sentence under 28 U.S.C. § 2255.  See Mar. 23, 2015 Mot., Criminal Case (ECF No. 38).  The court denied that motion.  See Oct. 20, 2016 Order, Criminal Case (ECF No. 46).  Bouldin filed several more post-conviction motions in his criminal case, each of which the district court dismissed as an unauthorized second or successive § 2255 motion.  See, e.g., July 11, 2017 Order, Criminal Case (ECF No. 57).  The Fourth Circuit affirmed that dismissal.  See United States v. Bouldin, 710 F. App'x 128, 128 (4th Cir. 2018).

## Discussion

I.  Savings Clause Jurisdiction

Pursuant to 28 U.S.C. § 2255, the trial court generally has exclusive jurisdiction over a petitioner's post-conviction motions challenging the validity of his conviction or sentence.  Section 2255(e), known as the "savings clause," preserves a limited role for the court in the district where a federal inmate is in prison to consider a § 2241 petition challenging the validity of his incarceration.  See United States v. Barrett, 178 F.3d 34, 49 (1st Cir. 1999).  The savings clause provides, in pertinent part:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to [§ 2255], shall not be entertained . . . unless

4

>  it . . . appears that the remedy by motion [under § 2255] is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e).  Bouldin, an FCI-Berlin inmate, seeks to invoke this court's savings clause jurisdiction under § 2255(e).

While the First Circuit has not provided examples of all circumstances in which savings clause jurisdiction might arise,[2] the court has clarified that § 2255's "adequacy and effectiveness must be judged ex ante."  Trenkler v. United States, 536 F.3d 85, 99 (1st Cir. 2008).  "[P]ost-conviction relief can be termed 'inadequate' or 'ineffective'" for purposes of invoking the savings clause "only when, in a particular case, the configuration of section 2255 is such 'as to deny a convicted defendant any opportunity for judicial rectification.'"  Id. (citation omitted).

Courts have allowed access to the savings clause in only "rare and exceptional circumstances, such as those in which strict adherence" to the statutory limits on access to relief under section 2255 "would result in a 'complete miscarriage of justice.'"  Id. (citation omitted).  Therefore, this court has

---

[2]In Sustache-Rivera v. United States, the First Circuit noted that savings clause jurisdiction has been found in cases where petitioners have asserted statutory interpretation claims previously unavailable to them, after new Supreme Court precedent has changed the law in the circuit and narrowed the scope of a criminal statute in a manner that would have rendered them not guilty of the offense of which they were convicted. 221 F.3d 8, 16 & n.14 (1st Cir. 2000) (citing cases).

5

savings clause jurisdiction if the configuration of § 2255 has effectively denied Bouldin any opportunity for judicial review, and manifest injustice has resulted.  Id.

## II.  Guidelines Sentence Claim and Actual Innocence

Bouldin's claims challenge the validity of his sentence. Bouldin argues that it was error for the sentencing court to base the advisory Guidelines sentence calculations upon an amount of heroin that exceeded the amount found in Bouldin's possession when he was arrested.  Bouldin argues he is "innocent" of any higher amount as he asserts the government obtained evidence to support a higher quantity of heroin during Bouldin's "proffer session," and that therefore, the government's use of that information to increase Bouldin's base offense level violated the plea agreement.

### A.   Guidelines Sentence Claim

Assuming without deciding that Bouldin's breach of plea agreement claim has any merit,[3] given that the court, in denying

---

[3] The plea agreement specifically provides, as follows:

> [N]o truthful information that the defendant provides pursuant to this agreement will be used to enhance the defendant's guidelines range . . . .  Nothing in this plea agreement, however, restricts the Court's or Probation Office's access to information and records in the possession of the United States. . . .

6

Bouldin's § 2255 motion, explained that information regarding the drug quantity attributable to Bouldin came from the PSR and the Probation Department's own investigation, this court notes that Bouldin could have raised the same claim at an earlier stage of his case. Bouldin points to no controlling precedent in the Fourth Circuit that would have precluded him from asserting a viable breach of the plea agreement claim at the time of his conviction, on direct appeal, or when litigating his initial § 2255 motion. It appears that there was authority upon which he could have based such a claim at those earlier stages of this case. See, e.g., United States v. Zakrzewski, 462 F. App'x 421, 428 (4th Cir. 2012) (reviewing for plain error defendant's claim presented in his direct appeal that government breached his plea agreement by using information derived from proffer session to enhance his sentence); United States v. Embree, 262 F. App'x 499, 504 (4th Cir. 2008) ("If the Government breaches express or implied terms of the plea agreement, a violation of due process occurs."). Accordingly, as to his Guidelines sentence claim, Bouldin has not satisfied the prerequisite to savings clause jurisdiction that there has been any pertinent change in the controlling law which makes presently available to the petitioner a claim that was not

---

Plea Agt., Criminal Case, ECF No. 15, at 3, 6.

7

previously available to him.

### B. Actual Innocence

For this court to exercise savings clause jurisdiction over his claims, Bouldin must also show that his circumstances present a miscarriage of justice. In general, in "collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent." United States v. Olano, 507 U.S. 725, 736 (1993); see also Trenkler, 536 F.3d at 99 ("Most courts have required a credible allegation of actual innocence to access the savings clause."). Actual innocence means factual innocence, not mere legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998). A petitioner "asserting innocence as a gateway . . . must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 536–37 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Bouldin offers no new evidence to show that he was in fact responsible for a lower drug quantity. Bouldin's argument that the government breached the plea agreement in order to demonstrate that a higher amount of heroin was attributable to Bouldin is a claim attacking the legal sufficiency of the drug quantity evidence; Bouldin's claim does not assert that he was

8

factually innocent of responsibility for the heroin quantity attributed to him. Bouldin has not offered any evidence to show he was innocent of the offenses underlying the sentence he challenges here. Furthermore, he does not contend that the sentence he received exceeded the statutory maximum. Bouldin has thus not demonstrated that there is any manifest injustice in his case, warranting an exercise of savings clause jurisdiction. Accordingly, Bouldin's § 2241 petition is properly dismissed for lack of jurisdiction.

## Conclusion

For the foregoing reasons, the district judge should dismiss Bouldin's § 2241 petition for lack of jurisdiction. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

May 8, 2019

cc: Chapelle Alphonso Bouldin, pro se

9